IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>JACKSON COUNTY SCHOOL DISTRICT No. 9, EAGLE POINT, an Oregon municipal corporation,<br><br>      Defendant. | Civil No. 06-3035-CL<br>   (lead case)<br><br>**OPINION AND ORDER** |
| JACKSON COUNTY SCHOOL DISTRICT No. 9, EAGLE POINT,<br><br>      Plaintiff,<br><br>      v.<br><br>GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York corporation,<br><br>      Defendant. | Civil No. 06-3042-CL |

**PANNER, Judge.**

## Background

The parties are Great American Insurance Company of New York ("Great American") and Jackson County School District No. 9,

1 - OPINION AND ORDER

Eagle Point (the "School District"). In August 2002, the Eagle Point Junior High School was damaged by fire. Great American had furnished the fire insurance policy. The School District, working in close coordination with Great American, spent several years designing and obtaining approval for a replacement school building, to be of like kind and quality. Great American hired its own expert to study the design and ensure the replacement building would meet that standard. As part of this process, the School District demolished the old school building to make way for the replacement building, and allegedly spent over seven hundred thousand dollars on design, permitting, and other costs. After three years of working together on this process, Great American and the School District reached an impasse.

Great American brought an action in federal court on May 25, 2006, seeking declaratory relief against the School District. The following day, the School District filed an action in state court against Great American, for breach of contract and declaratory relief. Great American removed the state case to federal court. The cases were then consolidated.

Great American moved for summary judgment, arguing that any claim by the School District is barred by the following provision in the insurance contract:

> No one may bring a legal action against us under this Coverage Part unless:
>
> 1.  There has been full compliance with all of the terms of this Coverage Part; and
>
> 2.  The action is brought within 2 years after the date on which the direct physical loss of damage occurred.

2 - OPINION AND ORDER

The School District asserted, in response, that Great American's conduct and representations estopped the company from enforcing the two year clause. The School District also filed a cross-motion for summary judgment, which asserted that:

A.  the Court lacks subject matter jurisdiction over these actions;

B.  the two-year time limitation does not apply to governmental entities; and

C.  the two-year time limitation does not apply to replacement cost claims.

On February 8, 2007, Magistrate Judge Cooney filed his Findings and Recommendation (docket # 33), which recommended that both motions for summary judgment be denied. The matter is now before me on *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

## Discussion

### Subject Matter Jurisdiction

The School District contends this court lacks subject matter jurisdiction. To avoid wasting the valuable time of all concerned, the School District should immediately have raised this issue by motion when these consolidated cases first arrived in federal court, and not waited until the summary judgment briefing. Nevertheless, because a true defect in subject matter jurisdiction may not be waived, see Hill v. Blind Industries and Services of Maryland, 179 F.3d 754, 760 (9th Cir. 1999), *amended*, 201 F.3d 1186 (2000), I will consider the School District's tardy arguments.

/ / / /

3 - OPINION AND ORDER

Great American's Complaint stated two grounds for subject matter jurisdiction. First, Great American cited the Declaratory Judgment Act, 28 U.S.C. § 2201. "However, the Declaratory Judgment Act . . . does not create subject matter jurisdiction where none otherwise exists. It only creates a particular kind of remedy available in actions where the district court already has jurisdiction to entertain a suit." Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970).

Great American also cites the diversity jurisdiction statute, 28 U.S.C. § 1332(a), which provides, in relevant part, that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> (1) citizens of different States * * * *

The amount in controversy exceeds $75,000, and Great American is not a "citizen" of Oregon. The only issue, then, is whether the School District is a "citizen" of Oregon.

A State is not a "citizen" of itself for purposes of diversity jurisdiction. Moor v. County of Alameda, 411 U.S. 693, 717 (1973). Thus, if the State of Oregon is the "real and substantial party in interest" in these actions, then diversity jurisdiction is lacking. State ex rel. Roberts v. Mushroom King, Inc., 88 B.R. 813, 816 (D. Or. 1987).

Conversely, "a political subdivision of a State . . . is a citizen of the State for diversity purposes," unless that political subdivision "is simply 'the arm or alter ego of the

4 - OPINION AND ORDER

State[.]'" Moor, 411 U.S. at 717. This "arm or alter ego" exception is a narrow one. Cf. id. at 718-21 (a county is a "citizen of the State for diversity purposes"); University of Rhode Island v. A. W. Chesterton Co., 2 F.3d 1200, 1202-03 (1st Cir. 1993).

The Magistrate Judge's Report analyzed, at length, the School District's contention that it is merely an arm or alter ego of the state, but concluded the District's argument was unpersuasive. I agree, though my analysis differs on one small point. The Report focuses on the facts and circumstances of this particular case, such as the precise relief sought in the Complaint, and the specific activity the School District engaged in that gave rise to the claims in question.

It is not clear, from the caselaw, whether the focus should be so narrowly constrained, or whether the court must consider the broader picture. Most cases examining whether an entity is an arm or alter ego of the State--including all six cases cited by the Magistrate Judge--do so in the context of the Eleventh Amendment. However, as Judge Kilkenny observed in DeLong Corp. v. Oregon State Highway Commission, 233 F. Supp. 7, 10 (D. Or. 1964), "we must keep in mind that diversity jurisdiction, in the last analysis, presents a problem which is separate and distinct from the immunity of the state under the Eleventh Amendment." See also Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n, 598 F.2d 1303, 1309 (3d Cir. 1979) (Seitz, C.J., concurring) (noting "the divergent principles underlying the two inquiries").

The Eleventh Amendment is best viewed as a personal privilege rather than a true limitation upon the court's subject

5 - OPINION AND ORDER

matter jurisdiction, Hill, 179 F.3d at 760, and it may be waived as to one action or claim but vigorously asserted as to another action or claim. Whether citizenship is so flexible a creature is a different matter.

Given this uncertainty, in addition to the analysis conducted by the Magistrate Judge, I also have evaluated the parties' arguments from a wider perspective. For instance, I have considered the full range of activities engaged in by the School District, not just new school construction, and also looked beyond the limited remedy sought in this particular case.

Under either standard, *i.e.*, narrow or broad perspective, I am satisfied that the State of Oregon is not the real party in interest here. The Magistrate Judge correctly concluded that the School District is not the arm or alter ego of the State of Oregon for purposes of 28 U.S.C. § 1332(1). Consequently, the School District is a citizen of Oregon, and this court has diversity jurisdiction over these consolidated actions.

**Estoppel**

Great American contends any action against it is barred by the limitations period in the policy. The School District responds, *inter alia*, that Great American's conduct and representations estop the company from enforcing that contractual provision.

Great American's brief errs in its statement of the elements of estoppel, offering a definition that parallels the elements of common law fraud. Though some cases have incorrectly used that definition, the better reasoned cases hold otherwise. See Ikon Office Solutions, Inc. v. American Office Products, Inc., 178 F.

6 - OPINION AND ORDER

Supp.2d 1154, 1164 (D. Or. 2001). "It is not necessary to the existence of an equitable estoppel that there should exist a design to deceive or defraud, but it is sufficient if the person against whom estoppel is asserted by his silence or representation has created a belief of the existence of a state of facts which it would be unconscionable to deny." Id., (quoting Hess v. Seeger, 55 Or. App. 746, 762 (1982)). The doctrine of equitable estoppel thereby prevents a person "from taking an inequitable advantage of a predicament in which his own conduct has placed his adversary." Ikon, 178 F. Supp.2d at 1164 (quoting Prosser & Keeton on Torts, § 105 (5th ed.)). The School District's arguments might also be construed as asserting that Great American has waived the two year limitation.

The statute and caselaw cited by Great American notwithstanding, the Magistrate Judge correctly concluded that there remain disputed material facts or inferences that must be resolved by the trier of fact. This precludes granting summary judgment for either party on this question.[1] The Magistrate Judge did not reach the other arguments asserted by the School District, nor do I.

## Conclusion

The court adopts the Recommendation (# 33) by Magistrate Judge Cooney, as modified above. The cross-motions for summary judgment (# 7 and # 13) are denied. The clerk shall schedule a

---

[1] A few sentences in the Report could be read as suggesting the court actually made certain factual findings. This inartful wording would not mislead the experienced attorneys representing the parties, who are intimately familiar with summary judgment proceedings.

7 - OPINION AND ORDER

telephone conference for the purpose of setting a prompt trial date.

    IT IS SO ORDERED.

    DATED this \_\_\_12\_\_\_ day of March, 2007.

                                                 /s/ Owen M. Panner
                                                Owen M. Panner
                                                United States District Judge

8 - OPINION AND ORDER