IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York corporation, | ) ) ) ) | Civil No. 06-3035-PA (lead case) |
| Plaintiff, | ) ) | **OPINION AND ORDER** |
| v. | ) ) | |
| JACKSON COUNTY SCHOOL DISTRICT No. 9, EAGLE POINT, an Oregon municipal corporation, | ) ) ) ) ) | |
| Defendant. | ) | |
| JACKSON COUNTY SCHOOL DISTRICT No. 9, EAGLE POINT, | ) ) ) | Civil No. 06-3042-PA |
| Plaintiff, | ) ) | (consolidated cases) |
| v. | ) ) | |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York corporation, | ) ) ) ) | |
| Defendant. | ) | |

**Panner, J.**

A fire damaged beyond repair 58,000 square feet of a junior high school owned by Jackson County School District #9, aka Eagle Point School District #9 ("School District"), and insured by Great American Insurance Co. of New York ("Great American").

1 - OPINION AND ORDER

The School District decided to replace the damaged school with a new building to be constructed across the street, which the policy permits.  Great American's liability is limited to the amount it would have cost the School District to rebuild at the original site, or the amount actually spent that is necessary to repair or replace the damaged property, whichever is less.

The School District also decided it will construct a new grade school instead of a replacement junior high school, with a design different from the building being replaced.  Again, the parties agree the District may do this, but the maximum sum Great American is obligated to pay towards the new building is unchanged.  The parties will simply estimate what it would have cost to rebuild the damaged property at the original location.

The parties resolved many issues between themselves, but were unable to agree on the rest.  Great American brought an action in federal court seeking a declaratory judgment as to the rights and duties of the parties.  The same day, the School District brought an action against Great American in state court, for breach of contact and declaratory relief.  Great American removed the District's action to federal court, where the cases were then consolidated.  I previously resolved certain issues on summary judgment.  Other issues will be tried to a jury.

## Issues for the July 8 Trial

**A.    Breach of Contract Claim**

Great American contends I "implicitly" ruled on the merits of the breach of contract claim.  Great American is mistaken.  I did reject certain affirmative defenses, and concluded this

2 - OPINION AND ORDER

action is timely.  I did not rule on the merits, nor was I asked to.  No motion for summary judgment was filed in that regard.

The breach of contract claim remains in the case, but it is not an issue the jury will consider in the July 8 trial.  This trial is limited to determining the replacement cost for the school.  We will not argue over who said what to who in the past, or whether the insurance company acted in good faith or bad faith.  Allowing this jury to hear evidence of what essentially amounts to settlement negotiations could unfairly prejudice one side or the other.  It would certainly distract the jury from the task at hand.  The majority of the trial materials submitted by both sides pertain to the breach of contract issue, not the replacement cost for the school.

Fed. R. Civ. P. 42(b) authorizes this court, in its discretion, to order separate trials of particular claims or issues.  I exercise that discretion here, and sever the breach of contract claim from the present trial.  After the jury has returned a verdict on the replacement cost issue, I will set a date for trial on the breach of contract claim to a second jury.  The parties may also elect to try the breach of contract claim to the court, or to file motions for summary judgment on this claim following the July 8 trial.

In light of my ruling clarifying the scope of the trial, the parties need to revise their trial materials.  Revised witness statements, exhibit lists, deposition designations, trial memoranda, proposed jury instructions, and verdict forms, shall be submitted by June 20, 2008.  Any objections to testimony or

3 - OPINION AND ORDER

exhibits, motions in limine, or additional deposition testimony (per Fed. R. Civ. P. 32(a)(6)) shall be submitted by June 25, 2008. Responses are due June 30, 2008. A second pretrial conference will be held on July 2, 2008, at 1:30 p.m., by telephone. The hour is subject to change, based on developments in a scheduled criminal trial.

**B.    Cost of Replacement School**

The parties' experts now agree on most aspects of the design. The parties also have agreed to accept the cost estimate from a particular consultant, with regard to a given design or feature. Of the remaining design disputes, some turn on questions of law which the court will now decide. The jury will resolve the few remaining factual disputes. The School District correctly summarized that process:

> The parties should simply present the agreed upon portions of the design and specifications as agreed to and present the alternative designs and/or specifications as items that the parties could not agree upon. The parties will then simply present expert testimony on why an alternative proposed by one party satisfies the replacement cost standard and an alternative presented by the other party does not. The cost consultant will provide evidence as to the costs of each alternative and the jury can then determine which alternative satisfies the standard and apply the costs accordingly.

**1.    Title IX (Girls' Locker Room)**

The School District contends that 20 U.S.C. § 1681(a), 34 C.F.R. § 106.41(c), and ORS 659.850 (referred to here collectively as "Title IX") require the District to provide a larger locker room for girls than the meager facilities that were

4 - OPINION AND ORDER

in the burned school, and that Great American must pay for that additional cost.  I need not decide the former question because, even if Title IX does impose such an obligation upon the District, that additional expense is not covered by the insurance policy.  The insurance policy provides, in relevant part:

> e.(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property * * * *
>
> (3) The ordinance or law referred to in e(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

Great American Trial Ex. 1, p. 59 and Trial Ex. 2, p. 14.

The 346-page insurance policy also contains an Increased Cost of Construction Coverage (Excess of Replacement Cost) endorsement, which states in relevant part:

> The Loss Limit is extended to include an amount equal to the increased cost of repair, rebuilding or construction of the building(s), on the same premises, of like height, floor area, and style and for like occupancy, caused by loss from any peril insured against under this policy and resulting from the enforcement of and limited to the minimum requirements of any state or municipal law or ordinance regulating the construction or repair of damaged building(s).

Title IX is not "an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements" nor is Title IX a "law or ordinance regulating

5 - OPINION AND ORDER

the construction or repair of damaged building(s)."  The additional cost of constructing a larger girls' locker room more closely resembles an additional feature for the school, such as a football field, state-of-the-art science laboratory, performing arts center, or teacher's lounge.  Even if state law mandated that new schools provide such features, the additional expense would not be covered by the replacement cost provisions of the insurance policy, except to the extent such feature was present in the school that burned.  The larger girls' locker room may be a desirable or even required feature in the new school, but the insurance policy does not allocate to Great American the responsibility of paying for this improvement.

### 2. **Elevator**

The School District contends that Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and state law governing access to public accommodations by individuals with disabilities--specifically ORS 447.247 and 447.241-- mandate that the replacement school have an elevator.  The School District further contends the cost of that elevator is among the replacement costs Great American is responsible for paying.

Titles II and III of the ADA, and their implementing regulations, establish exacting standards governing numerous design features.  See 28 C.F.R. Part 36 (public accommodations); 28 C.F.R. § 151 (state and local government facilities); Independent Living Resources v. Oregon Arena Corporation, 1 F. Supp. 2d 1124 (D. Or. 1998) (discussing design standards).  These requirements apply to a wide range of public accommodations

6 - OPINION AND ORDER

and government facilities, not just schools.  The same is true of ORS 447.247 and 447.241.

These requirements appear to have more in common with building codes than with Title IX.  This issue was not fully briefed by the parties, and it seems likely to arise in future cases.  Therefore, the parties have until June 30, 2008, to file supplemental briefing discussing whether state or federal law[1] requires the District to include an elevator in the replacement school, and whether such expense is properly considered a replacement cost covered by the policy.  The court will then decide the elevator issue as a matter of law, as there appear to be no disputed material facts.

### 3. Gymnasium Roof

The parties offer competing designs.  The jury will decide which design comports with the legal standard stated in the previous opinion.  <u>Great American Ins. Co. of New York v. Jackson County School Dist. No. 9, Eagle Point</u>, 2007 WL 2713894 (D. Or. September 17, 2007).

### 4. Lava/Loto Lane

After reviewing the parties' submissions, I conclude, as a matter of law, that Great American is responsible for paying for the improvements to Lava/Loto Lane.  The jury will determine the reasonable value of those improvements.

---

[1] The District's trial brief cites <u>Independent Living Resources v. Oregon Arena Corp.</u>, 982 F. Supp. 698, 796 (D. Or. 1997).  That decision discusses many important issues arising under Title III of the ADA, but the duty to provide elevators is not among the issues discussed.  The pinpoint cite is to a page not in the opinion.

7 - OPINION AND ORDER

### a.   Whether the Replacement School is Subject to the Zoning Code Requirements

At the time the fire occurred, the Transportation Plan for the City of Eagle Point ("City") already contemplated that a street extension eventually would be built through the District's property. The only uncertainty was precisely when that extension would be built, and who would pay for it. Once the school burned, City law authorized the City to insist that such street extension be included in the plans for the reconstructed school, and that the School District pay the cost of those improvements.

The school site is in the R-1 zone. The City zoning code in effect during the relevant time period states that schools built in the R-1 zone "are subject to the following conditions: 1. Dedication and improvement to public streets." City of Eagle Point Zoning Ordinance ("EPZO") § 3.042(e). See also EPZO § 6.060(b)(4) ("street dedications and improvements" may be required as condition of issuing conditional use permit). The record shows that the City would insist on construction of the Lava/Loto Lane extension as a condition of rebuilding the school.

### b.   Whether the District Unreasonably Failed to Mitigate Damages

Great American argues that the School District could have avoided the expense of building the Lava/Loto Lane extension by commencing re-construction of the school within one year after the fire, but the District unreasonably failed to do so. I disagree.

I've already ruled, in a different context, that it was not practical for the District to commence construction that soon.

8 - OPINION AND ORDER

Opinion of Sept. 17, 2007, at p. 11. That conclusion applies here as well. In addition, Great American's argument assumes the District would be exempted from the street improvement requirement by a grandfather provision for non-conforming uses. The District responds that schools are permitted in the R-1 zone by conditional use permit, EPZO § 3.042(e), hence the school would not be regarded as a "non-conforming" use.

Great American's argument further presumes that the grandfather clause exempts a replacement structure from all requirements, including street improvements. The point is far from obvious. EPZO § 4.260(c) allows a non-conforming <u>use</u> to continue. While the District could continue operating a school on the premises, this section is silent on street improvements.[2]

City of Eagle Point Zoning Ordinance § 4.260(d) grandfathers non-conforming <u>structures</u> "that could not be built under the terms of this Ordinance by reason of restrictions on area, lot coverage, height, yards, or other characteristics of the structure of its location on the lot . . . ." That section further provides that if "such structure be destroyed . . . it may be restored or replaced, provided it is done within one (1) year from the date the structure was destroyed."

Thus, the District could have replaced the structure notwithstanding current restrictions on the height or bulk of

---

[2] EPZO § 4.260(c)(3) states that "[i]f any such nonconforming use of land ceases for any reason for a period of more than six (6) consecutive months, any subsequent use of such land shall conform to the regulations specified by this Ordinance for the district in which land is located." I need not decide whether the fire constitutes an interruption in the use of the land, as other arguments are dispositive.

9 - OPINION AND ORDER

buildings.  That does not necessarily mean the replacement structure would be exempt from complying with all other requirements, such as providing modern sewer hookups and electrical wiring, or improvements to adjacent streets.

It is unlikely the School District could have avoided incurring the cost of the road improvements even if the District somehow had managed to commence re-construction within one year after the fire.  The District did not unreasonably fail to mitigate its damages with regard to the Lava/Loto Lane issue.

### c.   Dolan v. City of Tigard

Great American argues the required improvements to Lava/Loto Lane do not satisfy the "nexus" and "rough proportionality" standards of Dolan v. City of Tigard, 512 U.S. 374 (1994), and violate the Fifth Amendment to the United States Constitution. The School District argues that Dolan is limited to situations in which a property owner is compelled to dedicate part of her land to the government as a condition of developing the remaining property, which is not the situation here.

I decline to consider these questions.  Great American, as the insurer, lacks standing to assert this argument in its own right.  Moreover, the City is not presently a party to this action, and cannot defend its ordinances unless permitted to intervene.  To the extent any opinion offered by this court would only be advisory, in view of the current procedural posture, that is added reason not to reach the issue.

Nor will I permit a jury to speculate on whether the School District might have prevailed in such a hypothetical legal

10 - OPINION AND ORDER

challenge, assuming it was prepared to risk the substantial cost of litigating such matters.[3]  The jury might also have to estimate the legal fees that the School District would incur to mount such a challenge (which reduces any savings), how long construction might be delayed by that dispute, and any resulting increase in construction costs.  This approach would pile hypothetical upon hypothetical, while accomplishing little.  The court's objective here is to resolve the dispute between these parties, not to invent new disputes with new parties.

For present purposes, it is sufficient that there is no evidence the street improvement requirement is a product of collusion between the City and the School District aimed at defrauding Great American.  On the contrary, this appears to be a requirement the City imposes on all new schools, whether funded by the School District or by an insurance company.

The Lava/Loto Lane improvements are an expenditure the District would necessarily incur to rebuild the burned school in conformance with City ordinances regulating construction or zoning that were in effect at the time of the loss.  That expense is covered by the insurance policy.

/ / / /

/ / / /

---

[3] Even in legal malpractice claims, where a jury must decide what the result would have been in the "case within the case," it is the court and not the jury which determines what legal rulings would have been made by the first court had the issue been properly presented. See Chocktooth v. Smith, 280 Or. 567, 572-75 (1977).  This also highlights the error in District proposed Jury Instruction 39, and Great American's proposed Special Instruction No, 6.  Both assume the jury or a witness will decide what the law is.  That is the court's role.

11 - OPINION AND ORDER

### d. Cost of Lava/Loto Lane Improvements

The parties dispute the cost of the improvements. The jury will decide that question.

### e. Setoff for Land Sold by the School District

Great American contends it is entitled to a setoff because the District sold some land. Why this would entitle Great American to a setoff "[i]s a puzzlement." Rodgers and Hammerstein, The King and I (1956).

## 5. Other Cost Items

Great American's trial memorandum lists other items it contends are not covered by the insurance policy or exceed "like kind or quality" (*e.g.,* storm drain size, quality of cabinetry). These issues will be determined by the jury, unless resolved prior to trial.

The School District's trial memorandum mentions a dispute regarding improvements to Main Street and Tabor Street. The parties have not adequately briefed the issue. Depending on the details, it may be a matter for the court to resolve as a matter of law, or it may present an issue for the jury.

The parties may also disagree over "soft costs" for engineers, architects, and other consultants. Until the parties better explain the dispute, I cannot determine if it is a matter for the court or the jury.

## 6. Burden of Persuasion Regarding Replacement Cost

The parties disagree on who has the burden of persuasion regarding replacement cost. The School District contends that burden is on Great American, which brought an action for

declaratory relief.  However, the District brought its own action, which was consolidated with Great American's action. Great American contends the burden is on the District, as the party seeking compensation.  The authorities cited by the parties are not on point.  The issue is not coverage versus exclusion, see Employers' Ins. of Wausau v. Tektronix, Inc., 211 Or. App. 485, 510-14 (2007), or duty to defend, United States Fire Ins. Co. v. Mobley, 784 F. Supp. 782, 785 (D. Or. 1992).

The parties may address the issue in supplemental briefing by June 30, 2008.

## Conclusion

The jury trial on July 8, 2008, is limited to the replacement cost issue.  The School District's breach of contract claim remains in the case, but will be addressed at a later date.

Revised witness statements, exhibit lists, deposition designations, trial memoranda, proposed jury instructions, and verdict forms, shall be submitted by June 20, 2008.  Any objections to testimony or exhibits, motions in limine, or additional deposition testimony (per Fed. R. Civ. P. 32(a)(6)) shall be submitted by June 25, 2008.  Responses are due June 30, 2008.  A second pretrial conference will be held on July 2, 2008, at 1:30 p.m., by telephone.

Any additional cost for girls' locker rooms attributable to the requirements of Title IX are not replacement costs to be borne by Great American.  Great American is responsible for paying for required improvements to Lava/Loto Lane.  The jury will determine the reasonable value of those improvements.

13 - OPINION AND ORDER

The parties have until June 30, 2008, to file supplemental briefs concerning the elevator, soft costs, Main and Tabor Streets, and the burden of persuasion on replacement cost.

IT IS SO ORDERED.

DATED this 16th day of June, 2008.

/s/ Owen M. Panner
_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE

14 - OPINION AND ORDER